1   **UNITED STATES DISTRICT COURT**

2   **DISTRICT OF NEVADA**

3   * * *

4   ZAP'S ELECTRICAL, LLC,                          Case No. 3:19-CV-00603-CLB

5                                   Plaintiff,    **ORDER RE: COURT'S AUGUST 9, 2023**
                                                  **ORDER**
6           v.
                                                  [ECF No. 119]
7   MONARCH CONSTRUCTION,

8                                   Defendant.

9

10          This case involves an action filed by Plaintiff Zap's Electrical, LLC ("Zap's") against

11  Defendant Monarch Construction ("Monarch") and counterclaims asserted by Monarch

12  against Zap's. Currently pending before the Court is briefing regarding whether a previous

13  order entered by the district court is binding as law of the case and whether there were

14  questions of fact for the jury. (ECF No. 119). For the reasons stated below, the Court finds

15  that the case should proceed to trial on Zap's claims and Monarch's counterclaims.

16  **I.      PROCEDURAL HISTORY**

17          On July 31, 2019, Zap's filed the instant lawsuit against Monarch. (ECF No. 1.)

18  Zap's claims arise from an alleged contract between Zap's and Monarch related to

19  construction work which occurred when Zap's was not a licensed contractor in the state

20  of Nevada. (*Id*.) After the case was transferred to the unofficial northern division of the

21  District of Nevada, District Court Judge Robert C. Jones was assigned as the presiding

22  judge with the undersigned magistrate judge assigned to oversee pretrial matters. (ECF

23  No. 22.) In its complaint, Zap's alleged three claims for relief: (1) breach of contract; (2)

24  promissory estoppel; and (3) unjust enrichment. (*Id.* at 3-5.) As to the first claim, Zap's

25  alleges Monarch breached a contract between the parties by refusing to pay Zap's the

26  full amount upon completion of the construction project. (*Id.* at 3.) Next, Zap's alleges it

27  is entitled to recoup the reasonable amount of benefits obtained by Monarch based on

28  promissory estoppel because of Zap's detrimental reliance on Monarch's promise to pay

for work completed. (*Id.* at 4.) Finally, Zap's alleges Monarch inequitably retained the payment for completing the project and Zap's is entitled to recoup the reasonable amount of benefits obtained by Monarch based on the doctrine of unjust enrichment.

On August 26, 2019, Monarch filed their answer and asserted counterclaims against Zap's alleging: (1) breach of contract; (2) unjust enrichment; (3) promissory estoppel; and (4) conversion. (ECF Nos. 8, 15.) Monarch's first counterclaim alleges Zap's breached a contract between the parties by failing to pay Monarch after Monarch performed under the contract. (*Id.* at 4-5.) Monarch's second counterclaim alleges Zap's received benefits which were due to Monarch and which Monarch is entitled to recover to prevent Zap's unjust enrichment of Zap's. (*Id.* at 5-6.) Next, Monarch alleges promissory estoppel entitles Monarch to a portion of the proceeds from the construction work in connection with the work performed by both parties. (*Id.* at 6-7.) Finally, Monarch alleges Zap's was not entitled to any of the proceeds from the construction work and therefore, by keeping the funds, converted the proceeds to the exclusion of Monarch. (*Id.*)

In October of 2019, the Court entered an initial scheduling order and discovery plan. (ECF No. 24.) Following numerous amendments to the scheduling order, the deadline to file dispositive motions was set for December 9, 2020. (ECF No. 58.) Accordingly, Zap's filed its motion for summary judgment on December 9, 2020. (ECF No. 59.) On December 30, 2020, Monarch filed its motion for summary judgment. (ECF No. 63.) In response to Monarch's motion, Zap's filed a motion to strike Monarch's motion as untimely. (ECF No. 65.)

On September 9, 2021, the district court entered an order ruling on the parties' competing motions for summary judgment and Zap's motion to strike. (ECF No. 68.) In the order, the district court granted Zap's motion to strike Monarch's motion for summary judgment as it was filed "nearly three weeks after the deadline." (*Id.*) The district court then turned to the merits of Zap's motion for summary judgment. First, the district court considered whether Zap's had shown that there "was–and still is–an enforceable agreement." (*Id.* at 8.) The district court determined Zap's had not presented evidence

2

1    sufficient to show that a reasonable juror would find the parties agreed to the terms of the

2    alleged agreement and therefore denied summary judgment after concluding a genuine

3    issue of material fact existed with respect to this issue. (*Id.* at 8-9.)

4          Following this determination, the district court considered Monarch's argument that

5    even if a contract did exist, the contract was illegal pursuant to NRS 624.320 because

6    Zap's was not a licensed contractor in the state of Nevada at the time the agreement was

7    formed. (*Id.*) Although Zap's conceded the contract between the parties was illegal, Zap's

8    argued two exceptions applied through which Zap's could still recover under the terms of

9    the contract: substantial compliance and the *Magill* test. (*Id.*)

10         The district court addressed these exceptions in turn. With respect to the

11   substantial compliance exception, to fit within this exception, the party must have

12   "substantially complied" with Nevada's contractor licensing statutes. *Eagle Rock*

13   *Contracting, LLC v. National Security Technologies, LLC,* No. 2:14-cv-01278-GMN-NJK,

14   2017 WL 372977, at *3 (D. Nev. Jan. 25, 2017). The district court concluded that Zap's

15   had failed to substantially comply with the statute. The district court noted that, in contrast

16   to other cases where this exception applied, Zap's did not have any licenses in Nevada,

17   did not own the constructed properties, and did not function as a passive financier. (ECF

18   No. 68 at 10.) In sum, the district court found "no case applying Nevada law has extended

19   the substantial compliance doctrine as far as [Zap's sought] to stretch it." (*Id.*)

20         Next, the district court considered whether Zap's could enforce the alleged contract

21   under the *Magill* test. In *Magill v. Lewis*, the Nevada Supreme Court found that an illegal

22   contract could still be enforceable where the following four-factor test weighs in favor of

23   such enforcement:

24         [1] the public cannot be protected because the transaction has been
           completed, [2] where no serious moral turpitude is involved, [3] where the
25         defendant is the one guilty of the greatest moral fault and [4] where to apply
           the rule will be to permit the defendant to be unjustly enriched at the
26         expense of the plaintiff, the rule should not be applied.

27

28   333 P.2d 717 (Nev. 1958). In reviewing the factors, the district court held that "the general

3

1   rule–that an illegal contract is unenforceable–should not be altered here." (ECF No. 68 at

2   11.) In explaining why the exception would not apply, the district court stated its

3   conclusion as to each factor but did not elaborate on the reasoning for its conclusions

4   save for a brief discussion of the fourth factor. (*Id.*)

5          Finally, the district court noted neither the substantial compliance nor the *Magill*

6   exception can apply where the violations of the licensing statute where "blatant,

7   substantial, and repeated." (*Id.* (citing *Loomis v. Lange Fin. Corp.,* 865 P.2d 1161, 1165

8   (Nev. 1993).) The district court found that "while [Zap's] may have innocently began

9   working on the Projects thinking that its application for license and partnering with

10  licensed contractors was sufficient, that cannot be true after [the Nevada State

11  Contractor's Board ("NSCB")] informed them of violations" and Zap's continued to work

12  on the project. (*Id.*) Therefore, the district court concluded neither exception could apply

13  to work performed after NSCB's notice and denied Zap's motion for summary judgment.

14  (*Id.*)

15         Following the order on the motions for summary judgment, both parties consented

16  to proceed before the undersigned magistrate judge. Therefore, on August 24, 2022, the

17  case was referred to the undersigned magistrate judge on consent in accordance with 28

18  U.S.C. § 636(c). After participating in an unsuccessful settlement conference, the Court

19  entered an order setting the case for trial. (ECF No. 100.)

20         Per the Court's order regarding trial, the parties filed various documents. (*Id.*) Of

21  significance to the issues at bar, Monarch filed a document entitled a "Memorandum" in

22  support of its statement of the case. (ECF No. 110.) In this memorandum, Monarch raised

23  – for the first time – the issue of whether the district court's order related to Monarch's

24  motion for summary judgment was binding as law of the case and precluded Zap's claims

25  from being presented to the jury. (*Id.*) Monarch argued the district court's findings that the

26  contract at issue is illegal and neither exception described above applied prohibited Zap's

27  from any recovery because these rulings were binding under the law of the case doctrine.

28  (*Id.*) On August 9, 2023, the Court held a calendar call prior to the scheduled trial. (ECF

No. 119.) At the hearing, the Court ordered the parties to submit supplemental briefing on the issues raised by Monarch's memorandum to determine what, if any, claims could proceed to trial. (*Id.*) Specifically, the Court ordered to the parties to brief:

> (1)   Whether the district court's order, (ECF No. 68), is law of the case, and, if so, whether the factual findings in that order are binding; and

> (2)   Whether, despite those decisions appearing to be legal decisions, such decisions can be presented to the jury.

(*Id.*)

On August 30, 2023, Zap's filed its opening brief arguing that the district court's order is not law of the case and does not preclude Zap's from presenting its claims to the jury. (ECF No. 120.) Zap's also asserted that if the district court's order is law of the case, Monarch's counterclaims should likewise be dismissed. (*Id.*)

On September 5, 2023, Monarch responded. (ECF No. 121.) Monarch asserts that the district court's order is law of the case and "applying the law-of-the-case doctrine will allow this Court to rule without second-guessing, re-litigating or undermining the consistency of earlier decisions in this case." (ECF No. 121 at 1-6.) Monarch also argues its counterclaim would survive and proceed to trial even if the district court's order is deemed law of the case because the counterclaims are based on a separate contract. (*Id.* at 7-8.)

In reply, Zap's reiterates its arguments from the opening brief and asserts Monarch did not address the case law cited by Zap's related to law of the case. (ECF No. 122.)

The Court will analyze each issue in turn.

## II.   ANALYSIS

### A.   Law of the Case

First, the Court must determine whether the district court's findings are binding and therefore preclude Zap's claims from being presented to the jury under the law of the case doctrine. Here, the district court's order was a denial of Zap's motion for summary judgment. (ECF No. 68.) After considering the parties' briefs and conducting extensive

independent research, the Court finds that the district court's order is not binding under the law of the case doctrine.

Pursuant to Ninth Circuit case law, "the denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing." *Peralta v. Dillard,* 744 F.3d 1076, 1088 (9th Cir. 2014). Denial of summary judgment may result from a factual dispute at the time. *Id.* That dispute may disappear as the record develops. *See Shouse v. Ljunggren,* 792 F.2d 902, 904 (9th Cir.1986) (citing *Preaseau v. Prudential Ins. Co. of Am.,* 591 F.2d 74, 79–80 (9th Cir.1979)).

In *Peralta,* the Ninth Circuit upheld the decision of a district court granting the defendants judgment as a matter of law although it had previously refused to grant defendants' motion for summary judgment. *Id.* In so doing, the Ninth Circuit expressly overruled *Federal Insurance Co. v. Scarsella Bros.,* 931 F.2d 599 (9th Cir.1991), "[t]o the extent that *Scarsella Bros*. purported to hold that the law of the case doctrine bars district courts from reconsidering pretrial rulings." The Ninth Circuit reasoned that:

> "Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise. At the summary judgment stage, for example, trial courts ask only whether there could be a material issue of fact. They must draw all inferences in the non-movant's favor, *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and rest their rulings on the evidence that they think could be introduced at trial. But when considering whether to grant judgment as a matter of law, they look only at the evidence actually introduced at trial.

*Peralta*, 744 F.3d at 1088.

In *Fred Segal, LLC v. CormackHill, LP*, the Ninth Circuit found a district court "erroneously" held that its denial of the plaintiff's partial motion for summary judgment operated as "law of the case," requiring it to grant final judgment to defendants. 821 F. Appx 783, 786 (9th Cir. 2020). The court explained that a denial of summary judgment is only "a ruling that [a party] could hypothetically prove some set of facts that would support his claim," not a conclusive determination of that claim. *Id.* (citing *Peralta*, 744 F.3d at 1088). The Ninth Circuit held that the district court's summary judgment ruling did not

1  preclude Fred Segal, LLC from providing new or different evidence and law to support its

2  argument. *Id.* Therefore, because the district court's order, (ECF No. 68), was a denial of

3  summary judgment for the plaintiff, the Court finds the order does not bind it as the law of

4  the case. *Fred Segal, LLC,* 821 F. Appx. at 786.

5        **B.**    **ISSUES OF FACT**

6        As the district court's order, (ECF No. 68), does not bind the Court as law of the

7  case, the Court now turns to whether there are questions of fact to be submitted to the

8  jury. As noted in the district court's order, both parties agree that the contract, if it exists,

9  is illegal pursuant to Nevada law. (ECF No. 68 at 9.) However, the existence of the

10  contract itself is a question of fact for the jury. *Whitemaine v. Aniskovich*, 183 P.3d 137,

11  141 (2008) (per Nevada law, the question of contract formation is a question of fact).

12  Additionally, whether a second contract was formed is necessary to try Monarch's

13  counterclaims.

14        Moreover, the Court agrees with Zap's that the *Magill* test includes questions of

15  fact which should be presented to the jury.[1] As discussed above, in *Magill v. Lewis*, the

16  Nevada Supreme Court found that an illegal contract could still be enforceable where the

17  following four-factor test weighs in favor of such enforcement:

18      [1] the public cannot be protected because the transaction has been
19      completed, [2] where no serious moral turpitude is involved, [3] where the
    defendant is the one guilty of the greatest moral fault and [4] where to apply
20      the rule will be to permit the defendant to be unjustly enriched at the
    expense of the plaintiff, the rule should not be applied.

21

22  333 P.2d 717 (Nev. 1958).

23        Zap's argues the Court's treatment of these issues on summary judgment did not

24  appear to be based on a comprehensive review of the evidence presented at that time,

25  "much less on additional evidence that Zap's may present at trial." (ECF No. 120 at 3.)

26  _____

27  [1]    Although Zap's makes only a passing reference to the substantial compliance
exception, the Court finds that applying the exception implicates factual questions

28  because it involves evaluating factually whether the actions taken by Zap's are sufficient
to constitute substantial compliance with the statute.

Zap's states that it "intends to present evidence that, contrary to Defendant's assertions to the contrary, Defendant, from the inception of the parties' relationship, was fully aware that Zap's was not licensed in Nevada." (*Id.*) As to the third factor, Zap's argues that "the determination of the parties' relative moral fault is one that should not be definitively made until the finder-of-fact hears all the evidence and judges the credibility of witnesses on each side." (*Id.*) Additionally, as to the fourth factor, "[w]hether there has been unjust enrichment is essentially a question of fact." *In re Sunrise Suites, Inc.*, 2007 WL 9728691, *3 (D. Nev. Mar. 30, 2007) (citing *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 756, 942 P.2d 182, 187 (1997); *Unionamerica Mortgage & Equity Trust v. McDonald*, 626 P.2d 1272, 1274 (1981)). Therefore, the Court agrees that there are questions of fact for the jury with respect to the *Magill* test.

Finally, the district court's order, (ECF No. 68), noted that neither exception can apply where the violations of the licensing statute where "blatant, substantial, and repeated." (ECF No. 68 at 11 (citing *Loomis*, 865 P.2d at 1165).) However, the Court finds whether the violations were "blatant, substantial, and reported" also presents a question of fact for the jury.

Accordingly, as the district court's order, (ECF No. 68), does not bind the Court as law of the case and there are questions of fact for a jury, the Court finds Zap's claims should proceed to trial. Additionally, Monarch represented to the Court at the calendar call that its counterclaims are based on a separate contract. Therefore, these claims would proceed to trial regardless of whether Zap's claims are precluded by the district court's order, (ECF No. 68). (ECF No. 119.) However, as any alleged separate contract would involve the same parties, a trial on the counterclaims would involve much, if not all, of the evidence and testimony which would be used to try Zap's claims. Therefore, as a matter of judicial economy, proceeding as to both Zap's claims and Monarch's counterclaims in the same trial is prudent.

///

///

8

**III.     CONCLUSION**

    **IT IS THEREFORE ORDERED** that Zap's claims and Monarch's counterclaims shall proceed to a jury trial consistent with the above.

    **IT IS SO ORDERED.**

    **DATED**: <u>October 20, 2023</u>.

**UNITED STATES MAGISTRATE JUDGE**